UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GRAYHAWK, LLC,                                                                                       PLAINTIFF

v.                                                                                       CIVIL ACTION NO. 3:07-CV-272-S

INDIANA/KENTUCKY REGIONAL COUNCIL OF
CARPENTERS, LOCAL UNION NO. 64, *et al.*,                              DEFENDANTS

### MEMORANDUM OPINION

Plaintiff Grayhawk, LLC, a drywall contractor, has sued two labor organizations and three individuals, asserting six counts of unfair labor practices. For the reasons that follow, Counts II and III will be dismissed, and Count VI will be dismissed in part. The remaining counts survive.

### I.

The Complaint's factual allegations can be summarized quickly. Grayhawk says that it has been (and will continue to be) damaged as the result of three sorts of activities engaged in by some or all of the defendants.

First, Grayhawk alleges that the defendants and their agents have trespassed onto its private property and caused property damage, for which it seeks compensation. (3d Am. Compl. ¶¶ 9, 35.) It also seeks an injunction barring such behavior in the future. (*Id.* at ¶ 23; Prayer for Relief ¶¶ 1(a), (b), (d), (f)).

Second, it alleges that the defendants and their agents made false statements to Joe Arthur, an employee of Messer Construction Company. Messer is a Louisville general contractor with whom Grayhawk does business. The defendants or their agents allegedly told Arthur that Grayhawk was "under investigation for tax fraud and immigration issues" (3d Am. Compl. at ¶ 12) and that it had offered one of them a job for which he would not "have to worry about paying taxes" on his wages

(*id.* at ¶ 14). Plaintiff seeks to recover both compensatory and punitive damages on the theory that these statements tortiously interfered with its contracts with Messer and others in the local construction industry. (*Id.* at ¶¶ 25, 29.) It further seeks damages to compensate it for the loss of its good will in connection with these statements, under both the state-law theory of slander and the federal-law theory that these statements violate § 8(b)(4) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(b)(4). (*Id.* at ¶¶ 31, 32, 37, 39; Resp. 16, 21-22.) It also asks that we enjoin further such false statements. (3d Am. Compl. ¶ 23; Prayer for Relief ¶ 1(g).)

Third, plaintiff complains that the defendants picketed against Grayhawk at the J. Graham Brown Cancer Center in Louisville, after Grayhawk had completed its work there. (3d Am. Compl. ¶¶ 20.) This, it says, also violates § 8(b)(4) and entitles it to compensation for loss of good will. (*Id.* at ¶ 39.)

The defense has moved to dismiss the entire complaint: the first four counts (state-law slander and interference with contract claims) on the theory that federal jurisdiction has been abrogated by the NLRA, and the last two (a state-law claim for slander and a federal claim under the NLRA) for failure to state claims on which relief can be granted.[1]

## II.

Jurisdiction for this case is premised on 28 U.S.C. §§ 1331 and 1367. The first five counts being state-law claims, plaintiff's only hook for invoking the federal judicial power is Count VI's reliance on alleged violations of 29 U.S.C. § 158(b). But as Grayhawk now concedes, its request for injunctive relief (Count IV's primary purpose, judging by its title) is foreclosed by *Burlington N. R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429, 448 (1987) (stating that

---

[1] Defendants alternatively move for summary judgment on Count V.

the NLRA vests exclusive authority to issue injunctive relief under § 158(b)(4) in the National Labor Relations Board (NLRB)). As this Court cannot grant the relief sought, that claim must be dismissed in accordance with Fed. R. Civ. P. 12(b)(6).

The only remaining federal cause of action is a demand for damages under § 303(b) of the NLRA, 29 U.S.C. § 187(b), which allows for recovery of damages suffered as a result of a labor organization's violation of 29 U.S.C. § 158(b)(4). In turn, that section "prohibits certain conduct having an object of enmeshing neutral employers in disputes not their own." 2 The Developing Labor Law 1637 (Patrick Hardin & John E. Higgins, Jr., eds., 4th ed. 2001). The allegation here is that by making false statements and picketing the Brown Cancer Center after Grayhawk had ceased working there, the defendants engaged in activities prohibited by that section.

As an initial matter, we note that by its terms § 187 applies only to labor organizations, and not to natural persons.[2] Consequently the claims under Count VI against the individual defendants (David Tharp, Lawrence W. Hugo, and Donald Sherry) in their personal capacities must be dismissed for failure to state a claim on which the Court can grant relief.

As for the two unions (Indiana/Kentucky Regional Council of Carpenters, Local Union No. 64; and Indiana/Kentucky Regional Council of Carpenters) also named as co-defendants: It is apparently conceded that, if proven, the allegations would show that they have violated § 158(b)(4), and we see no error in that concession. The remaining question is whether Grayhawk has adequately alleged any damages recoverable under § 187(b). Although the statute does not set an amount-in-controversy requirement, its plain terms require allegation and proof of actual damages. Grayhawk

---

[2] Section 187(a) declares it unlawful "for any labor organization" to engage in conduct labeled "unfair" by § 158(b)(4), making no mention of individuals. Section 187(b) creates a cause of action in favor of a party injured by a violation of subsection (a), thereby limiting the population of potential defendants to the labor organizations themselves.

claims three possible sources of such damages here. First, it claims that it has suffered "damage to its good will." (3d Am. Compl. ¶ 39.) The Sixth Circuit has recognized that the loss of a business's good will can serve as the basis for a damages claim.[3] *See Agric. Servs. Ass'n. v. Ferry-Morse Seed Co.*, 551 F.2d 1057, 1071 (6th Cir.1977). However, for that line of reasoning to have any traction, the plaintiff must allege facts sufficient to support the propositions (1) that it had accumulated some measure of good will prior to defendants' allegedly unlawful acts; (2) that those acts resulted in a diminution of its good will; and (3) that the plaintiff's loss is provable—that is, not too remote and speculative in nature. *See Roundhouse v. Owens-Illinois, Inc.*, 604 F.2d 990, 995 (6th Cir. 1979); *Agric. Servs. Ass'n.*, 551 F.2d at 1070-72.

As in other factual contexts, the failure to plead enough facts to demonstrate the plausibility of the damages element of the case dooms it to dismissal. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Twombley* demands only that a prayer for relief be "plausible" in order to avoid dismissal. In the Court's view, the complaint in this case—the allegations of which we must take as true—is sufficient to clear this bar. Plaintiff claims to have maintained a "good working relationship" with

---

[3] At least, it can under the law of (*inter alia*) Tennessee (per *Agric. Servs. Ass'n.*), Ohio (*see Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992)), and Kentucky (*see Duo-Therm Division, Motor Wheel Corp. v. Sheergrain, Inc.*, 504 S.W.2d 689, 693 (Ky. 1973)). We see no reason why, if adequately proved, this category of damages would not be cognizable in an action under federal law.

at least one of its clients, and that it has thereby "established substantial good will." (3d Am. Compl. ¶¶ 11, 23.) It further alleges that defendants' actions in making false statements and picketing a former work site were intended to compel various second-party contractors to terminate their business relationships with Grayhawk, and that those activities resulted in a decline in the firm's good will. (*Id.* at ¶¶ 37-39.) Finally, we think it "plausible"—if perhaps not very likely[4]—that plaintiff could produce evidence documenting with some precision the value of this loss, such that the damages element of the claim would not be impermissibly speculative.

However, we admonish the plaintiff that once it is required to submit evidence in favor of its claim, it will have to "present data from which the amount of probable loss could be ascertained as a matter of reasonable inference." *Agric. Servs. Ass'n.*, 551 F.2d at 1072. (citations and internal quotation marks omitted). It will have to come forth with evidence from which the value of the firm's good will and the loss thereto can be reliably assessed.[5] Plaintiffs will not be permitted to leave assessment of damages to guesswork on the part of the jury.[6]

---

[4] "[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombley*, 550 U.S. at 556 (citation and internal quotation marks omitted).

[5] Elements of good will include: the firm's name; its good reputation; the number and character of its customers; its history of success; its average profits; and the probability of its continuing existence and success under the same name. *Agric. Servs. Ass'n.*, 551 F.2d at 1071.

[6] Defendants contend that deposition testimony shows that Grayhawk has not actually suffered any decline in its good will, and that the Court should therefore treat its 12(b)(6) motion as one for summary judgment. (Reply 13.) But as Grayhawk has not briefed this issue or been given an opportunity to present opposing evidence, the Court will exclude the deposition testimony from its consideration and treat the 12(b)(6) motion as such. *See* Fed. R. Civ. P. 12(d).

A second possible form of injury attributable to the alleged false statements is the loss of income and business advantage that Grayhawk asserts as a component of its tortious interference with contracts claim. (Count II, 3d Am. Compl. ¶¶ 25-26.) The basis of that claim is the same set of false statements that constitute part of the secondary boycott claim in Count VI. To the extent that those contract and business losses are attributable to defendants' alleged unfair labor practices, they are recoverable under this § 187 cause of action.

Grayhawk also alleges that it can recover "costs, expenses and attorneys' fees in its efforts to eliminate the illegal conduct alleged above by Defendants and their agents." (3d Am. Compl. ¶ 40). The American Rule, however, generally bars recovery of attorneys' fees incurred in the course of litigation. *Summit Valley Industries v. Local 112, United Brotherhood of Carpenters*, 456 U.S. 717 (1982). Seeking to distinguish its case, Grayhawk cites *Abreen Corp. v. Laborers' Int'l Union, N.A.*, 709 F.2d 748, 760 (1st Cir. 1983), which ruled that "expenses which do not relate to attempts to terminate the picketing are compensable as actual damages." Those expenses did include attorneys' fees, but they were accrued during negotiations between the plaintiff corporation and a third-party supplier that had been the target of the defendant union's illegal secondary boycott. Grayhawk's complaint, by contrast, alleges only that it "has incurred costs, expenses, and attorneys' fees in its efforts to eliminate the illegal conduct alleged . . . by Defendants and their agents." (3d Am. Compl. ¶ 40.) There is no allegation that the attorneys have done any work external to Grayhawk's dispute with the defendants. The response brief asserts that plaintiff's counsel engaged in discussions with third parties, "the goal of which was to minimize the impact of Defendants' illegal secondary activity" (Resp. 22-23), but the complaint contains no factual allegations to support this charge. Moreover, the language of the response reads like a "formulaic recitation of the elements

of a cause of action," *Twombley*, 550 U.S. at 555, in that it merely parrots the terms of *Abreen* without providing any reference to specific events for which fees would be recoverable. The Court therefore finds that Grayhawk's claim for costs and fees is foreclosed by the American Rule as expressed in *Summit Valley Industries*.

Grayhawk has adequately stated a claim for damages to its corporate good will, contractual relations, and business advantage resulting from the unions' alleged illegal actions. Because all the claims are "so related . . . that they form part of the same case or controversy," jurisdiction over the whole case is therefore proper under 28 U.S.C. § 1367. We now turn to the complaint's state-law allegations.

### III.

Counts I through IV of the complaint assert various state-law claims, which the defendants argue are preempted in the labor-management relations context by the NLRA.[7] In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959), the Supreme Court held that when an activity is arguably either protected or prohibited by § 7 or § 8 of the NLRA (that is, 29 U.S.C. § 157 or § 158), "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." There are exceptions to this rule, one of which (relevant here) is for cases in which the court "cannot . . . conscientiously presume that Congress meant to intrude so deeply into areas traditionally left to local law." *Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 297 (1971) (*citing Linn v. Plant Guard Workers*, 383 U.S. 53 (1966); *Automobile Workers v. Russell*, 356 U.S. 634 (1958)). This exception, as plaintiff recognizes, is

---

[7] Count V is also a state-law claim (for trespass), but there is no argument that it is preempted.

limited to cases where the action can be adjudicated apart from the NLRB without interfering with the federal scheme that governing the underlying labor dispute. *Lockridge*, 403 U.S. at 304. We consider these four counts in turn.

### A.

Count IV is the foundational claim on which the first three counts are based (at least in part). It seeks damages for slander, alleging that the defendants made false statements about Grayhawk to employees of Messer Construction and other general contractors. The title of the charge indicates that the plaintiffs initially (or, rather, in their Third Amended Complaint) intended to proceed on a theory of slander *per se* (i.e. without allegation of actual damages), and indeed Count IV contains no claim of injury. This is inconvenient for Grayhawk, because *Linn* explicitly holds that the NLRA strips the courts of jurisdiction over labor-related defamation actions absent proof of malice[8] and actual damages. 383 U.S. at 65-66. At first glance, Count IV appears to have placed itself in a box over which the Court has no jurisdiction.

The Federal Rules, however, require us to construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e). Here, as discussed above, the plaintiff has elsewhere alleged that defendants' false statements caused injury to its good will, its contractual relations, and its prospective business advantage. (3d Am. Compl. ¶¶ 39, 25-26.) It further alleges that the defendants' conduct "was willful and malicious and was specifically intended to cause Plaintiff damage" (*Id.* at ¶ 28), which in the Court's view is sufficient to show the requisite knowledge or recklessness. Plaintiff thus adequately states a claim for slander "not *per se*," over which the Court can exercise jurisdiction under *Linn*.

---

[8] Meaning, in this context, knowledge of the statements' falsity or a reckless disregard for their truth. *Linn*, 383 U.S. at 65; *New York Times Co v. Sullivan*, 376 U.S. 254 (1964).

But this leads to a new problem: The defamation claim, insofar as it is pressed against the unions themselves, appears to be subsumed by the allegations contained in Count VI. The persons involved, the statements in question, and the requested relief are all the same as the false statements portion of Grayhawk's § 187 claim. *Teamsters Local 20 v. Morton,* 377 U.S. 252 (1964) therefore suggests that the state-law allegations against the unions are preempted as a result of the federal government having "occupied the field and closed it to state regulation." *Id.* at 258 (*quoting Automobile Workers v. O'Brien*, 339 U.S. 454, 457 (1950)). In *Morton*, the Court vacated an award of damages under state law where § 187 provided a federal remedy for the same wrongful behavior. Both state and federal courts, it concluded, are "confined in the field of damage actions brought for union secondary activities to the specifically limited provisions of § 303 of the federal Act." *Id.* at 256-57. Because the case at bar involves secondary activity regulated by the NLRA, it is argued, § 187 precludes application of state-law remedies against defendants to whom it applies.

The present case is in our view distinguishable from *Morton*, because the cause of action for slander is distinct from the § 187 cause of action. The former requires proof of falsity and malice, while the latter requires proof that the defendants engaged in impermissible secondary boycotting activities. The facts to be adduced may be simialr under both causes of action, but the legal elements to be fulfilled are different. *Morton* therefore does not control: Federal law has not occupied the field, and § 187 does not preempt the slander claims.[9]

Because the slander claims are well-pled and are not preempted by federal law, they may proceed. Should the requisite elements be proved, punitive damages may be available under Kentucky law. *See, e.g., Miller v. Woods*, 338 S.W.2d 412, 413 (Ky. 1960); *Linn*, 383 U.S. at 66

---

[9] Of course, the Court will not allow double recovery in the event that both slander and unfair trade practices are proved.

(indicating that punitive damages may be awarded in a labor-related defamation suit if compensable harm has first been established).

**B.**

Count II alleges tortious interference with contracts and prospective business advantage; Count III seeks to recover punitive damages on the same basis. This interference is claimed to be the result of the defamatory statements that are the basis of Count IV. "Under Kentucky law, tort liability exists for . . . interference with a known contractual relationship, if the interference is malicious or without justification, or is accomplished by some unlawful means such as fraud, deceit, or coercion." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 487 (Ky. 1991) (*citing Derby Road Bldg. Co. v. Commonwealth*, 317 S.W.2d 891 (Ky. 1958); *Brooks v. Patterson*, 29 S.W.2d 26 (Ky. 1930)). Knowingly or recklessly making false and injurious statements would appear to be an "unlawful means" under this rule, and plaintiff further alleges that the statements were coercive (*see* 3d Am. Compl. ¶ 23). Grayhawk has thus stated a claim.

That claim, however, is preempted. The "interference with contract" of which Grayhawk complains stems entirely from the allegedly false statements made by the defendants. The Court has recognized above that damages arising from those statements, including for lost business, may be recoverable if the slander and secondary-boycott allegations of Counts IV and VI are proved, because they may represent actual damages resulting from the statements in question. But the sort of interference with contract for which Grayhawk seeks to recover in Count II is exactly (or, at a minimum, arguably) the kind of secondary boycotting activity that is covered by § 158(b)(4): The claim is that the defendants induced or encouraged, through their false allegations of wrongdoing, third parties not to do business with Grayhawk. *Garmon* denies the Court jurisdiction to hear this

claim presented as such. When dressed up as slander subject to the strictures of *Linn*, it fits an exception to *Garmon*; and when raised in a § 187 action it enjoys an explicit Congressional grant of jurisdiction that overrides the normal rule of preemption. The cause of action asserted in Count II, however, fits neither category, and the Court has no authority to entertain it. Consequently we also are without power to award the punitive damages requested in Count III. Both of those counts will be dismissed.

## C.

Count I invokes KRS 336.130(2), which prohibits both employers and unions from engaging in "unfair or illegal acts or practices or resort[ing] to violence, intimidation, threats or coercion." Grayhawk seeks injunctive relief against the actions for which plaintiff seeks damages in Counts II through V. Which is to say, it seeks injunctions barring future maliciously false statements about Grayhawk (Counts II through IV) and trespass (Count V). We set the latter request to one side for the time being.

The question here is whether the plaintiffs may be entitled to an injunction against future slanders under state labor law. That question ultimately rests on the same issues we have been discussing above. As the plaintiff correctly points out, KRS 336.130(2) declares unlawful conduct not covered by the federal labor laws, but this does not hold any relevance here. The acts of slander alleged in the complaint are arguably within the scope of the federal laws, and they do not fall into the gaps that state law is free to fill.

*Linn* dictates that the only labor-related slanders for which the courts can offer *any* relief, in either law or equity, are those that are made with malice and that cause actual damage. Once those critical elements are proven, however, courts are free to "apply state remedies." *Linn*, 383 U.S. at

55. So, if the slanders to be enjoined are both malicious and injurious, they are not preempted; and if Kentucky law allows courts to enjoin labor-related slander, this Court can supply the requested relief. We need go no further.[10]

### IV.

Finally, the defendants have moved to dismiss Count V (trespass) for failure to state a claim or, alternatively, for summary judgment.

### A.

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the court must take the allegations of the complaint as true, draw all reasonable inferences in favor of the plaintiff, and grant dismissal only when it is beyond doubt that the plaintiffs can prove no set of facts entitling them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the court need not accept the truth of legal conclusions or draw unwarranted factual inferences. *DirectTV*, 487 F.3d at 476 (*citing Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The court may grant a motion to dismiss for failure to state a claim when the complaint fails to plead enough facts to demonstrate the plausibility of the claim. *Twombly*, 550 U.S. at 544. "Although Fed. R. Civ. P. 8 does not require detailed factual pleading, a plaintiff's assertions must still direct the defendant to the factual cause of the plaintiff's alleged injury . . . . The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions . . . devoid of any well-pleaded facts." *McTigue v. City of Chicago*, 60 F.3d

---

[10] As Grayhawk raises only the preemption argument with respect to this request for injunctive relief, and does not challenge the sufficiency of the pleading on other grounds, we see no need to delve into Kentucky remedies law at this time.

381, 382 (7th Cir. 1995) (*citing Baxter v. Vigo County School Corp*, 26 F.3d 728, 736 (7th Cir. 1994)).

Here, the sum total of the factual allegations is contained in two paragraphs of the complaint. First, paragraph 9 reads:

> Since on or about January 12, 2007, [Defendants] have trespassed on private property of Plaintiff and others in the Bluegrass Industrial Park on Plantside Drive, in Jefferson County, Kentucky, have caused property damage to Plaintiff and others, and have engaged in other acts of intimidation on Plaintiff's private property.

Paragraph 35 reads:

> Defendants have willfully and intentionally trespassed onto Plaintiff's property and intentionally and willfully caused damage to personal property and chattels. As a result, Plaintiff is entitled to damages to compensate it for the damage to its physical property.

Defendants argue that these allegations are insufficient under the federal pleading standards to constitute a well-pleaded cause of action. Citing *Twombley*, they argue that the allegations of "trespass," without more, contain no factual support and that Count V is merely the sort of "formulaic recitation of the elements of a cause of action [that] will not do." 550 U.S. at 555.

While we have some sympathy with this argument, at this stage of the game we think the complaint sufficient. "Specificity sufficient to supply fair notice of the nature of the action will withstand a motion under Rule 12(b)(6)." *Bramlet v. Wilson*, 495 F.2d 714 (8th Cir. 1974). "Trespass" implies entrance on another's land without consent or justification, and the relevant audience (i.e. the Court and opposing counsel) know what the term means. To require the plaintiff to spell out each of the tort's legal elements (e.g. "Defendants entered the land"; "Defendants had no permission or justification for entering the land.") would serve no useful purpose. On a motion to dismiss, courts "presume that the general allegations in the complaint encompass the specific facts

necessary to support those allegations." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998). A fair reading of the complaint is enough for the Court and defense counsel to know that it alleges that the defendants entered Grayhawk's land without permission or justification, and that they damaged property while there. This is enough to provide "fair notice of the nature of the action." Grayhawk has sufficiently stated a claim.

**B.**

Next, we consider the defense's motion for summary judgment as to the trespass claim. A party moving for summary judgment has the burden of showing that there are no genuine issues of material fact and that the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in the light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The issue here is whether Grayhawk has presented any evidence that the defendants ever entered on land from which Grayhawk had the right to exclude them. As best the Court can tell, the

dispute looks like this: Defendants, protesting Grayhawk's policies, picketed outside of the company's property. The protest evidently began on Plantside Drive, public property on which the defendants have a conceded right to peaceably assemble. However, it seems to have spilled over onto the grassy area abutting the road, and at this point the parties' rights become less clear. Grayhawk claims that its property runs all the way up to Plantside Drive, and that therefore anyone stepping onto the grass without permission is a trespasser. While acknowledging that an easement exists over the grassy area, plaintiff insists it is limited to use by public utilities and does not grant the general public the authority to trample wherever it pleases. In response, defendants point to a report they commissioned indicating that the area of land designated "Plantside Drive" extends beyond the paved section of road, and encompasses eight feet of grass running alongside the asphalt. Therefore, they say, a person walking or picketing on that eight-foot swath is still on public land, and cannot have been trespassing.

      In the Court's view, the record is insufficiently clear on a number of key points to compel the entrance of summary judgment. There is conflicting evidence of where the relevant property lines lie. The deed indicates that Grayhawk's land extends to Plantside Drive, but this is ambiguous: up to the paved road, or up to the grassy area? Neither do the parties agree as to the nature of the easements and rights-of-way, and the record contains no deeds or other documents explaining them with any precision. Furthermore, it is not exactly clear where the complained-of picketing occurred: Was it limited to just the road and grass, or did the picketers enter further onto Grayhawk's property? Without answers to these questions it is not possible to determine whether or not a trespass occurred. Because we must view the evidence in the light most favorable to the non-moving party

and draw reasonable inferences in its favor, summary judgment for the defense is not appropriate given the present state of the record.

### C.

At last we reach the final issue in this case, to which we alluded earlier: Count I's request for an injunction against future trespasses. The only question presented in this regard is whether such a remedy is preempted by the NLRA, and we conclude that it is not. In *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 537-38 (1992), the Supreme Court concluded that an employer may validly bar non-employees from engaging in union activities on its property, so long as reasonable alternative means of communication exist. Here, none of the defendants are employees of Grayhawk. If, as it appears, the defendants could maintain their protest entirely on public land, a reasonable alternative exists. *Lechmere* therefore indicates that the trespass action in general and the request for injunction in particular are cognizable in federal court.

That is all we are asked to decide at this juncture: Neither side has moved for summary judgment on this issue; nor has Grayhawk moved for a preliminary injunction. We therefore end our inquiry here.

A separate order will be entered in accordance with this opinion.

**Charles R. Simpson III, Judge**
**United States District Court**