UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GRAYHAWK, LLC                                                                  PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:07-CV-00272

INDIANA/KENTUCKY REGIONAL
COUNCIL OF CARPENTERS, LOCAL
UNION NO. 64, *et al.*                                            DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on the motion of plaintiff Grayhawk, LLC ("Grayhawk") for reconsideration of our Memorandum Opinion and Order in this matter entered December 20, 2009. For the reasons set forth herein, defendant's motion will be **DENIED**.

## BACKGROUND

Grayhawk is a drywall contractor. It sued two labor organizations and three individuals, claiming that they had engaged in various unfair labor practices. In November 2008, the defendants moved to dismiss all claims contained in Grayhawk's Third Amended Complaint. We allowed most of Grayhawk's claims to go forward, but granted the defendants' motion with respect to Grayhawk's claims for tortious interference with contract and prospective business advantage, and for punitive damages pursuant to that claim (Counts II and III of Grayhawk's Third Amended Complaint).[1]

---

[1] We also granted the defendants' motion with respect to Count VI of the Third Amended Complaint to the extent such count sought injunctive relief and relief against individual defendants. Grayhawk has not moved for the court to reconsider this part of our prior decision.

We summarized the facts underpinning Counts II and III in our original Memorandum Opinion:

> . . . . [Grayhawk] alleges that the defendants and their agents made false statements to Joe Arthur, an employee of Messer Construction Company. Messer is a Louisville general contractor with whom Grayhawk does business. The defendants or their agents allegedly told Arthur that Grayhawk was "under investigation for tax fraud and immigration issues" (3d Am. Compl. at ¶ 12 ) and that it had offered one of them a job for which he would not "have to worry about paying taxes" on his wages (*id.* at ¶ 14).

Memorandum Op. (DN 62) at 2.

We dismissed Grayhawk's claim for tortious interference on the grounds that it was preempted by the National Labor Relations Act (NLRA) and that only the National Labor Relations Board had original jurisdiction over the claim. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). Grayhawk now moves that we reconsider this decision, arguing (1) that there is no "labor dispute" between the parties that would warrant the application of the NLRA and (2) that, even if the NLRA does apply, Grayhawk's claim is not preempted because it has alleged that the defendants acted with actual malice in the actions that led to the tortious interference claims.

## ANALYSIS

Reconsideration is an extraordinary remedy and is granted only sparingly. *Gesler v. Ford Motor Co.*, 185 F. Supp. 2d 724, 729 (W.D. Ky. 2001). Traditionally, courts will grant a motion for reconsideration only when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004) (unpublished) (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). "The court, in order to promote finality of decisions and judgments, should not consider such a motion

when the moving party merely disagrees with the court's decision and attempts to reorganize and refocus its previous evidence and legal analysis." *Gesler*, 185 F. Supp. 2d at 724 (citing *Plakson Elec. Mats. v. Allied-Signal*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)).

Here, Grayhawk argues that dismissing Counts II and III of its complaint constituted manifest injustice. "Manifest injustice has been defined as [a]n error in the trial court that is direct, obvious, and observable. . . . A showing of manifest injustice requires that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *United States v. Canal Barge Co.*, 2009 WL 541267, at *2 (W.D. Ky. 2009) (citations and quotations omitted).

Grayhawk first argues that it was clear error to hold that the NLRA preempted its claims because it and the defendants are not involved in a "labor dispute" as defined by the NLRA. According to the statute, a "labor dispute"

> includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 152(9).

A "labor dispute," as defined in the Act, encompasses a broad range of union activities. *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union*, 39 F.3d 191, 195 (8th Cir. 1994). A union need not be attempting to organize workers at a particular business in order for a "labor dispute" to arise. *Id*. at 194–95. In fact, a labor dispute exists in any situation "where the union acts for some arguably job-related reason and not out of pure social or political concerns."

*Id.* at 195 (citing *Hasbrouck v. Sheet Metal Workers Local 232*, 586 F.2d 691, 694 n.3 (9th Cir. 1978)).

Grayhawk claims that the defendants' actions were not "job-related" but rather were intended "to make a broader point unrelated to terms and conditions of employment. . . . [T]hey were seeking to harm the business relationships of Grayhawk for the benefit of contractors with which they have signed collective bargaining agreements." Mot. to Reconsider (DN 67) at 7. Grayhawk compares the actions of the defendants here with those of the defendant in *N.L.R.B. v. Int'l Longshoreman's Ass'n,* 332 F.2d 992 (4th Cir. 1964). In that case, the defendant was a union that had ordered its members not to perform work on any vessels that were involved in trade with Cuba. *Id.* at 993–95. The court concluded that the actions of the defendants "pertain[ed] to a general political question" rather than "terms or conditions of employment," and therefore no labor dispute existed. *Id.* at 996.

*International Longshoreman's Association* is inapplicable here. The "broader point" Grayhawk claims the defendants were making in this case was not social or political, but economic. Even if the defendants were, as Grayhawk alleges, trying to encourage contractors as a general matter to do business with subcontractors with which they had collective bargaining agreements, such reason would arguably be "job-related." The union (and its members) would certainly benefit financially from any increase in demand for union workers. Although there might be some political or social element to claiming that Grayhawk violated tax and immigration laws, or encouraging the hiring of union members, the undeniable economic effect

of these actions renders them "job-related." A "labor dispute" as defined the NLRA is present in this case.²

Grayhawk's second argument is that its claims for tortious interference with contract are not preempted by the NLRA because it has pleaded that the actions that underlie its claim were committed with actual malice. In support of its argument, Grayhawk cites *Beverly Hills Foodland*, claiming that it stands for the proposition that "a plaintiff may avoid preemption of a claim of tortious interference with contract and prospective business advantage by properly pleading that the actions underlying the claim, defamation in this case, were malicious and caused injury." Mot. to Reconsider at 9. *Beverly Hills Foodland*, however, does not contain such an unequivocal rule. The court in *Beverly Hills Foodland* upheld a district court's determination that the plaintiff's tortious interference claim was not preempted, and held that when a plaintiff asserts a tortious interference claim based on defamatory conduct, he must plead malice in order for the claim to go forward. 39 F.3d at 196. However, the court did not explain how pleading malice would affect the NLRA preemption analysis, and therefore Grayhawk's reliance on *Beverly Hills Foodland* is misplaced.

The central inquiry in determining whether a state law claim is preempted by the NLRA is not whether a plaintiff pleads a particular element of a cause of action, but rather whether "the [state law claim] is identical to . . . or different from . . . the claim that could have been, but was not, presented to the Labor Board." *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978). We addressed this question with respect to this case in

---

²We also note that Grayhawk itself invokes the protections of the NLRA in its Third Amended Complaint, alleging that the same conduct that forms the basis for its tortious interference claim also constituted an illegal "secondary boycott" under the Act. Third Amended Compl. (DN 35) at ¶ 37.

our previous Memorandum Opinion, concluding that "the sort of interference with contract for which Grayhawk seeks to recover in Count II is exactly (or, at a minimum, arguably) the kind of secondary boycotting activity that is covered by § 158(b)(4) [of the NLRA]." Grayhawk's arguments do not warrant reconsideration of this case, and our Memorandum Opinion and Order of December 20, 2009 will stand as written.

    A separate order will issue in accordance with this opinion.